## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **S.D., H.D., D.M., D.S., and J.W.,** *on behalf of themselves and all others similarly situated,*<br><br>              *Plaintiffs,*<br><br>      v.<br><br>**Wellpath LLC,**<br><br>**Renee Bingham, R.N.,**<br><br>**&**<br><br>**Rachel McCarthy, R.N.,**<br><br>              *Defendants.* | |
| **CLASS ACTION COMPLAINT**<br>**WITH DEMAND FOR A JURY TRIAL** | |

### NATURE OF ACTION

1.    Plaintiffs bring this action on behalf of all individuals who received insulin injections in the Pasco County jail between approximately January 2021 and the present date. As a result of Defendants' pattern and practice of clearly unsafe injection practices, which contaminated multi-dose insulin vials, Plaintiffs have been exposed to life-threatening bloodborne illnesses. The Class seeks declaratory and injunctive relief, medical monitoring, and damages.

### PARTIES

2.    Plaintiff S.D. is a resident of Pasco County, Florida. At all material times, he has been incarcerated in the Pasco County jail. He is diabetic.

3.     Plaintiff H.D. is a resident of Pasco County, Florida. At all material times, he has been incarcerated in the Pasco County jail.  He is diabetic.

4.     Plaintiff D.M. is a resident of Pasco County, Florida. At all material times, he has been incarcerated in the Pasco County jail.  He is diabetic.

5.     Plaintiff D.S. is a resident of Pasco County, Florida. At all material times, he has been incarcerated in the Pasco County jail. He is diabetic.

6.     Plaintiff J.W. is a resident of Pasco County, Florida. At all material times, he has been incarcerated in the Pasco County jail.  He is diabetic.

7.     Defendant Wellpath LLC is a private, for-profit correctional healthcare company, incorporated in Tennessee and having a principal street address of 1283 Murfreesboro Road, Suite 500, Nashville, Tennessee. It is registered to do business in the state of Florida, and its registered agent for service of process is Corporate Creations Network Inc., 801 U.S. Highway 1, North Palm Beach, Florida 33408. Wellpath is a "person" under 42 U.S.C. § 1983. Wellpath's corporate predecessor was Correct Care Solutions, LLC.

8.     Defendant Renee Bingham, R.N., was, at all relevant times, an employee, agent, and/or subcontractor of Wellpath, working as its Health Services Administrator at the Pasco County jail.

9.     Defendant Rachel McCarthy, R.N. was, at all relevant times, an employee, agent, and/or subcontractor of Wellpath, working as a nurse at the

Pasco County jail. On information and belief, she began working for Wellpath at the jail approximately one year ago.

## JURISDICTION & VENUE

10.    Jurisdiction is asserted under 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1343(a)(3) (redressing civil-rights deprivations under color of law); 28 U.S.C. § 1343(a)(4) (recovering damages and securing equitable relief for civil-rights violations); and 28 U.S.C. §§ 2201–02 (declaratory relief and equitable remedies).

11.    The Court has personal jurisdiction over Defendants because they worked and did business within this district, and venue is proper here under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

### Pasco County outsources jail medical care to Wellpath.

12.    Defendant Wellpath contracts with governmental entities to provide medical services to inmates. On its website, Wellpath declares that its "expertise and reach is without match" and touts that it has "almost 15,000 seasoned healthcare professionals" working in adult and juvenile facilities. It also markets its services for "Cost Containment."

13.    In an effort to reduce medical costs, Pasco County contracted with Wellpath to provide healthcare services to the people incarcerated at its jail.

By virtue of its county contract and through its actual activities, Wellpath acted under color of state law, voluntarily assumed a public function, and took on legal responsibilities to comply with the requirements of the United States Constitution and other applicable laws with regard to providing adequate medical care to Pasco County's incarcerated population.

14.    On information and belief, Wellpath was responsible for hiring, training, and supervising nurses and other healthcare professionals at the Pasco County jail. It was responsible for adopting, implementing, and enforcing customs, policies, and practices pertaining to medical care for those in Pasco County's custody. Wellpath had a duty to ensure that the medical care provided to those in custody met constitutional requirements and other legal standards.

15.    At all material times, Defendant Bingham acted under color of state law and was legally responsible to comply with the requirements of the United States Constitution and other applicable laws with regard to training and supervising healthcare personnel—including Nurse Rachel McCarthy— to provide adequate medical care to Pasco County's incarcerated population.

16.    At all material times, Defendant Nurse McCarthy acted under color of state law and was legally responsible to comply with the requirements of the United States Constitution and other applicable laws with regard to providing adequate medical care to Pasco County's incarcerated population.

### Incarcerated diabetics and their serious medical need for safely administered insulin injections

17.    Individuals in the custody of the government have a constitutional right to adequate medical care.

18.    Diabetes is a chronic health condition in which the patient's ability to produce or respond to insulin is impaired. This impairment results in abnormal metabolism of carbohydrates. If diabetics cannot properly regulate their blood-glucose levels, diabetics may experience hyperglycemia, hypoglycemia, diabetic ketoacidosis, diabetic shock, or other dangerous reactions.

19.    Some diabetic patients require injections of insulin to regulate their blood glucose. Incarcerated insulin-dependent diabetics are at the mercy of correctional healthcare providers to safely obtain insulin.

20.    On information and belief, there are between 40–100 diabetic individuals in the custody of the Pasco County jail on any given day.

21.    Diabetic patients at the Pasco County jail receive blood-glucose testing and, if necessary, insulin injections twice daily from Wellpath medical personnel.

22.    Insulin-dependent diabetic patients require regular blood-glucose testing to determine whether, how much, and what type or types of insulin they require under the prescribing healthcare provider's orders.

23.    Most insulin-dependent diabetics require more than one type of insulin with each injection, depending on their prescribing healthcare provider's orders.

24.    A standard insulin vial contains 10 mL (1000 units) of insulin and may be used to administer insulin to as many as 50 patients (depending on individual dosages).

25.    Safe injection practices are intended to prevent the transmission of infectious disease during preparation and injection of medications.

26.    Unsafe injection practices put patients at risk for exposure to deadly bloodborne pathogens, such as hepatitis B, hepatitis C, and human immunodeficiency virus (HIV), as well as other infectious diseases, such as herpes and syphilis.

27.    Consistent with safe injection practices and the standard of care for nursing, only a sterile syringe may be safely inserted into an insulin vial.

28.    A syringe that has been used to administer an injection to a patient is no longer sterile and thus cannot safely be inserted into a multi-dose insulin vial that will be used to administer insulin to other patients.

29.    If a syringe that has been used to inject a patient is reinserted into an insulin vial, the remaining insulin in the vial will be contaminated by any bloodborne pathogen in the previously injected person's blood.

30.    The on-duty nurse in supposed to follow the same procedure for each diabetic inmate for every "med pass" in the Pasco County jail. First, the nurse is to check the inmate's blood glucose. Next, the nurse should refer to the prescribing healthcare provider's orders to determine the type(s) of insulin each inmate needs and the quantity for each type of insulin. After that, the nurse should prepare the syringe to administer the appropriate type(s) and dose(s) of insulin to the patient.

31.    Currently, there are five types of injectable insulin that act at different speeds to control the patient's blood glucose: rapid-acting insulin, regular or short-acting insulin, intermediate-acting insulin, long-acting insulin, and ultra-long-acting insulin. Prescribing providers order combined doses based on the patient's needs.

32.    Under the standard of care for nursing, the procedure for preparing injections with multiple types of insulin is as follows: first, the nurse must use an alcohol pad to swab each insulin vial that will be used for that patient. The nurse must then inject into each insulin vial a volume of air equal to the amount of insulin that will be drawn from each. While the needle of the syringe is inserted into the first vial, the nurse must invert the first vial, draw the ordered amount of insulin through the needle and into the syringe, and then remove the syringe from the first vial. For each additional type of insulin, after verifying the correct dose the nurse must repeat the same process of placing

the needle into the vial, inverting the vial, and withdrawing the correct amount of insulin from the vial into the syringe.

33.   By drawing up each type of insulin into the vial before injecting the patient, the nurse avoids contaminating the vials of insulin.

34.   Under the standard of care for nursing, if the amount of insulin remaining in a vial is not enough to complete the patient's dose of that type of insulin, the nurse must follow the same sterile procedure with a new vial of the particular type of insulin. Alternatively, to maintain sterile conditions, the nurse could inject the patient with a partial dose, change needles, and inject the patient with a second partial dose.

### Defendant Nurse McCarthy's practice of inserting used needles into insulin vials, resulting in contamination.

35.   On information and belief, while administering insulin to a diabetic patient with HIV in early January 2022, Defendant Nurse McCarthy drew up the remaining contents of a vial of insulin into a syringe and injected the patient. This was only a partial dose of the patient's required insulin. On information and belief, Nurse McCarthy took the ***same syringe*** she used to inject the HIV-positive patient and inserted it into another vial of insulin to draw up the balance of the patient's insulin dose, which she then administered to him in a second injection.

36.    Next, Nurse McCarthy administered insulin from the same multi-dose vial to other diabetic inmates—after potentially contaminating it with HIV.

37.    On information and belief, one or more affected patients, including one or more Plaintiffs, filed grievances complaining about this deadly contamination.

38.    On information and belief, when questioned by supervisory personnel, Nurse McCarthy acknowledged that this had been her practice throughout her entire year-long employment at the jail: she would administer a partial dose of insulin to a patient, insert the ***same needle*** into a second vial of insulin, and then administer a second injection to the same patient. Through this standard practice, Nurse McCarthy would have contaminated thousands of insulin doses.

39.    The safe practice—and the well-known standard practice throughout the nursing profession—would have been to draw up the partial dose from the first vial, then insert the sterile needle to draw up the remaining dose from the second vial, and then give the patient a single injection. This would have avoided contaminating the second vial.

40.    On information and belief, the insulin vials contaminated by Nurse McCarthy's unsafe practice were then used by other nurses to administer insulin to patients.

41.    Wellpath attempted to cover up this misconduct. Recently, Wellpath Health Services Administrator Defendant Bingham ordered personnel working in the jail not to reveal anything about the insulin-contamination issue.

### Wellpath conducts blood tests and administers antiretroviral medications to *some* of the inmates exposed to the HIV-contaminated insulin.

42.    Some—but not all—of the diabetics potentially exposed to contaminated insulin had blood drawn by Wellpath personnel to be tested for bloodborne illness.

43.    Wellpath personnel implemented a prophylactic course of HIV medications (Isentress and Truvada) for some—but not all—inmates potentially infected with HIV by contaminated insulin.

44.    Medical staff at the jail did not tell the patients placed on the prophylactic HIV medications *why* they were required to take these new medications and failed to obtain informed consent to this prophylactic regimen.

45.    According to the manufacturer's website, side effects of Isentress include "severe skin reactions and allergic reactions that can be serious, and may be life-threatening or lead to death" as well as "fever; generally ill feeling; extreme tiredness; muscle or joint aches; blisters or sores in mouth; blisters or peeling of skin; redness or swelling of the eyes; swelling of the mouth, lips, or face; problems breathing" as well as liver complications.

46.    According to the manufacturer's website, side effects of Truvada include "headache, abdominal pain, and weight loss," "worsening of hepatitis B infection," "kidney problems, including kidney failure," "lactic acidosis," "severe liver programs, which in rare cases can lead to death," and "bone problems, including bone pain, softening, or thinning, which may lead to fractures."

47.    Screening for HIV infection days after exposure is not effective: the most common screening tests check for antigens or proteins that do not appear in detectable levels until, at a minimum, 2-to-8 weeks post-exposure.

48.    One or more of the named Plaintiffs has been tested for HIV and has not been given the prophylactic HIV medications.

49.    One or more of the named Plaintiffs has been tested for HIV and has been given the prophylactic HIV medications.

50.    One or more of the named Plaintiffs has experienced side effects from the prophylactic HIV medications.

51.    Wellpath personnel also administered a hepatitis vaccine and/or booster to some—but not all—of the inmates potentially infected with hepatitis by contaminated insulin, including one or more of the named Plaintiffs.

**Wellpath fails to alert inmates administered contaminated insulin of their risk of exposure, including inmates who have been released from custody or transferred to other facilities.**

52.    On information and belief, all individuals subjected to Nurse McCarthy's unsafe injection practices between January 2021 and January 2022 have not been advised of their potential exposure to bloodborne diseases or tested for such illnesses.

53.    On information and belief, patients potentially infected by the contamination of insulin vials not only remain in the Pasco County jail but have also been (1) released into the community; (2) transferred to state facilities; or (3) transferred to other county jails, such as the Hernando County jail, where Pasco County pays $73/day/person to house some of its population due to overcrowding at its facility.

**Wellpath's constitutionally deficient conduct deprived Class members of their constitutional rights.**

54.    Wellpath maintained constitutionally deficient customs, policies, or practices that subjected the jail's diabetic population to substantial risk of suffering serious harm and death and that were a moving force in causing the harms alleged in this lawsuit. These included, but were not limited to, (1) a custom, policy, pattern, or practice of failing to train nursing personnel regarding safe administration of injectable medications; and (2) a custom,

policy, pattern, or practice of failing to supervise nursing personnel regarding safe administration of injectable medications.

55.     Nurse McCarthy acted with deliberate indifference to Plaintiffs' and the Class members' serious medical needs. She made intentional decisions regarding administering insulin injections that subjected the jail's diabetic population to a substantial risk of suffering serious harm and death.

56.     Defendants were deliberately indifferent to the serious needs of these diabetic inmates. Despite possessing subjective knowledge of the substantial risk of serious harm presented by using nonsterile procedures or contaminated insulin vials, Defendants recklessly or intentionally disregarded these risks, causing Class members to be injected with contaminated insulin.

57.     Defendants' conduct shocks the conscience and is intolerable to notions of fundamental fairness. Even lay people without medical training understand the inherent dangers of using a dirty needle to withdraw medication from a vial that will be shared with other patients. Defendant Nurse McCarthy's reckless practice, Defendant Wellpath's deficient policies, and Defendant Bingham's and other supervisors' failures to properly train and supervise Nurse McCarthy constitute a subjectively reckless disregard for the safety of Plaintiffs and the Class members.

58.     Not only did Wellpath exhibit deliberate indifference to the legitimate and serious medical needs of Plaintiffs, but it took affirmative steps to prevent

Class members from learning about what Defendants did to them—as Class members had every right to learn—when Defendant Bingham instructed Wellpath employees not to reveal information about the insulin contamination.

59.     Each Class member had no choice but to rely on Wellpath to administer insulin.

60.     Each member of the Class has suffered past harm, as well as future harm in the form of greatly increased risk of life-threatening diseases, including HIV.

### FACTS RELATING TO NAMED PLAINTIFFS

61.     Plaintiff S.D. is a diabetic individual who was in the custody of Pasco County and housed in its jail. He received insulin injections during Nurse McCarthys employment.

62.     Plaintiff H.D. is a diabetic individual who was in the custody of Pasco County and housed in its jail. He received insulin injections during Nurse McCarthy's employment.

63.     Plaintiff D.M. is a diabetic individual who was in the custody of Pasco County and housed in its jail. He received insulin injections during Nurse McCarthy's employment.

64.     Plaintiff D.S. is a diabetic individual who was in the custody of Pasco County and housed in its jail. He received insulin injections during Nurse McCarthy's employment.

65.    Plaintiff J.W. is a diabetic individual who was in the custody of Pasco County and housed in its jail. He received insulin injections during Nurse McCarthy's employment.

66.    At the present time, Plaintiffs have not been diagnosed with any disease as a result of their exposure to contaminated insulin but reasonably fear that their exposure to contaminated insulin may result in disease.

67.    Each Plaintiff has filed or attempted to file a grievance with the jail regarding the contamination issue and has or will exhaust any required administrative remedies.

## CLASS ACTION ALLEGATIONS

68.    Plaintiffs bring this action on behalf of themselves and all other persons similarly situated ("the Class").

69.    Plaintiffs proposed the following Class definition, subject to amendment as appropriate:

> All persons who received one or more insulin injections in the Pasco County jail between [the date Nurse Rachel McCarthy began working at the jail, believed to be approximately January 2021][1] through January 18, 2022.

Collectively, these persons are referred to in this complaint as "Class members." Plaintiffs are members of the Class. Excluded from the Class are

---

[1] The Class definition will be amended to a date certain once Plaintiffs confirm the date Nurse McCarthy's employment commenced.

all Defendants, any entities in which a Defendant has a controlling interest, any agents, employees, or immediate family members of any Defendant, any judicial officer to whom this action is assigned and any member of such judicial officer's staff or immediate family.

70.    Plaintiffs do not know the exact number of members in the Class. But Plaintiffs reasonably believe that there are far more than 100.

71.    With two insulin injections per day per each of the approximately (conservatively estimated) 40 diabetic patients, the total number of insulin injections administered in the Pasco County jail each year is 29,200. That is nearly 30,000 potential exposures during the estimated Class period.

72.    Using the estimate of 100 diabetic patients, with two insulin administrations per day, there would be 73,000 potential exposures during the Class period.

73.    Plaintiffs and all members of the Class have been harmed by the acts of Defendants because they are subject to increased risk of life-threatening bloodborne illnesses as a result of contaminated insulin injected into their bodies at the Pasco County jail by Wellpath personnel. Class members reasonably experience fear and anxiety regarding whether they have contracted such illnesses.

74.    This class-action complaint seeks declaratory and injunctive relief, medical monitoring, and money damages.

75.    The joinder of all Class members is impracticable due to the size of the Class. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified through records maintained by the Wellpath and/or the Pasco County Sheriff's Office.

76.    There are well-defined, identical questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions that may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

a.    Whether incarcerated diabetics had a constitutional right to access insulin injections without being exposed to bloodborne illness by unsafe injection practices;

b.    Whether the grossly negligent, reckless, and/or intentional misconduct in contaminating an unknown number of insulin vials with non-sterile syringes put injected individuals at risk;

c.    Whether injection with contaminated insulin poses a risk of bloodborne illness;

d.    Whether Defendant Wellpath, through Defendant Bingham and others, failed to provide adequate training to medical staff regarding safe practices for handling injectable insulin;

e.    Whether Defendant Wellpath, through Defendant Bingham and others, failed to provide adequate supervision of medical staff regarding safe practices for handling injectable insulin;

f.    Whether Defendants were deliberately indifferent to the legitimate medical needs of Class members;

g.    Whether Defendants should be required to provide medical monitoring relief on a going-forward basis;

h.    Whether Defendants should be required to provide appropriate notification to potentially exposed individuals;

i.    Whether Defendant Wellpath had adequate systems in place to ensure the safe administration of injectable medications at the jail;

j.    Whether Defendant Wellpath was negligent in hiring, training, retaining, and/or supervising Defendant Nurse McCarthy;

k.    Whether any Defendant was deliberately indifferent to the legitimate medical needs of inmates;

l.    Whether Defendant Bingham failed to properly train and supervise Defendant Nurse McCarthy;

m.    Whether Defendant Wellpath and Defendant Bingham imposed an unconstitutional prior restraint precluding medical personnel from revealing any information about the insulin-contamination issue; and

n.    Whether Defendants are liable to the Class.

77.    As persons who were injected with potentially contaminated insulin, the Class members are at increased risk for developing life-threatening diseases. These claims are typical of each Class member.

78.    Plaintiffs have retained counsel experienced in handling a wide variety of class-action claims and civil-rights claims on behalf of incarcerated individuals.

79.    The class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to ensure that all individuals who we subjected to contaminated insulin are notified of their potential exposure and have access to appropriate and necessary medical care.

The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small.

80.    Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

81.    Defendants subjected the Class members to ongoing and substantial risk of serious physical, mental, and emotional harm, including death.

82.    Defendants, despite being on notice that Class members had been exposed to HIV or other bloodborne illnesses, failed to notify affected individuals of their increased risk.

83.    Defendants' failure precluded Class members from promptly seeking medical care and from taking steps to protect those in their lives from potential exposure (through sexual activity, use of shared bathroom facilities, or otherwise).

84.    On information and belief, Defendant Wellpath, and its supervisory employee Defendant Bingham, failed to provide adequate training on safe injection procedures, which evidences deliberate indifference to the rights of the incarcerated population. The need for such training would be obvious to a reasonable official given the deadly consequences of contaminating medicine with bloodborne pathogens.

## CLAIM 1
### VIOLATIONS OF THE EIGHTH AND FOURTEENTH AMENDMENT
### UNDER 42 U.S.C. § 1983
### (AGAINST ALL DEFENDANTS)

85.    Plaintiffs incorporate all allegations of this complaint.

86.    As a result of the conduct alleged in this complaint, Defendant Nurse McCarthy is liable under 42 U.S.C. § 1983 for violating Class members' rights under the Eighth and Fourteenth Amendments to the United States Constitution by denying Class members' constitutionally required medical care and subject them to inhumane conditions of confinement.

87.    As a result of the conduct alleged in this complaint, Defendant Wellpath is liable under 42 U.S.C. § 1983 for violating Class members' rights under the Eighth and Fourteenth Amendments to the United States Constitution by maintaining unconstitutional customs, policies, patterns, and practices that resulted in the administration of contaminated insulin to diabetics in Pasco County's custody and inhumane conditions of confinement.

88.    As a result of the conduct alleged in this complaint, Defendant Bingham and other Wellpath supervisory personnel are liable under 42 U.S.C. § 1983 for violating Class members' rights under the Eighth and Fourteenth Amendments to the United States Constitution by failing to train and/or supervise Nurse McCarthy.

89.    As a direct and proximate result of Defendants' unconstitutional acts and omissions, Class members are at increased risk of contracting potentially deadly bloodborne illnesses and will endure extreme anguish and anxiety.

### CLAIM 2
### MEDICAL MONITORING
### (AGAINST ALL DEFENDANTS)

90.    Plaintiffs incorporate all allegations of this complaint.

91.    Each diabetic individual who received an insulin injection in the Pasco County jail during Nurse McCarthy's employment has been exposed to potentially contaminated insulin (whether that insulin was administered by Nurse McCarthy or another nurse who subsequently administered insulin from a vial Nurse McCarthy had contaminated).

92.    Defendants breached their duty of care to Plaintiffs and the Class in administering and/or permitting to be administered insulin contaminated with one or more bloodborne illnesses.

93.    Each person who received an injection of contaminated insulin during Nurse McCarthy's employment is at significantly increased risk of contracting one or more bloodborne illness and unwittingly transmitting such illnesses to unsuspecting third parties.

94.    On information and belief, Class members were exposed to HIV through Nurse McCarthy's practice of contaminating insulin vials. HIV is usually transmitted by sexual intercourse or receiving an injection containing an

infected person's blood cells. Being injected with HIV-positive blood created a much higher level of exposure to HIV than being in jail with HIV-positive individuals.

95.    HIV may remain latent or dormant in an infected person for years or even decades.

96.    On information and belief, Class members were also exposed to hepatitis B because of Nurse McCarthy's use of contaminated insulin. Hepatitis B is usually transmitted by contact with an infected person's blood. Being injected with hepatitis-B-positive blood created a much higher level of exposure to hepatitis B transmission than simply being in jail with hepatitis-B-positive individuals.

97.    Hepatitis B may remain latent or dormant in an infected person for years or even decades.

98.    On information and belief, Class members were also exposed to hepatitis C because of Nurse McCarthy's use of contaminated insulin. Hepatitis C is usually transmitted by contact with an infected person's blood. Being injected with hepatitis-C-positive blood created a much higher level of exposure to hepatitis C transmission than simply being in jail with hepatitis-C-positive individuals.

99.    Hepatitis C may remain latent or dormant in an infected person for years or even decades.

100.  The nature of this intravenous exposure to other individuals' bodily fluids, including blood, exposes each Class member to many other bloodborne illnesses at a level far greater than the normal background levels of exposure. The Class members would not have been injected with the contaminated insulin subjecting them to these risks of disease but for Defendants' failures.

101.  As a direct and proximate result of their exposure to contaminated insulin, Class members have a significantly increased chance of contracting a serious latent disease, including but not limited to HIV, hepatitis B, or hepatitis C—if they have not contracted such diseases from these exposures already.

102.  Monitoring procedures exist that make possible early detection of the diseases transmissible through contaminated insulin.

103.  The increased risk of manifesting serious disease makes it reasonably necessary under contemporary scientific principles for each person to undergo periodic diagnostic medical examinations different from what would normally be prescribed in the absence of such exposure.

104.  To safeguard their health and the health of their loved ones against life-threatening diseases that the Class members are now at greater risk of contracting, Class members will suffer terror, fear, humiliation, anxiety, embarrassment, annoyance, and the cost in time and effort of monitoring their

health status. These damages are a proximate result of the acts and omissions of Defendants.

105.  As such, Plaintiffs and the Class seek the formation of a medical monitoring fund to pay for the costs and expenses of medical monitoring.

### CLAIM 3
### FIRST AMENDMENT PRIOR RESTRAINT UNDER 42 U.S.C. § 1983
### (AGAINST DEFENDANTS WELLPATH AND BINGHAM)

106.  Plaintiffs incorporates all allegations of this complaint.

107.  Defendant Bingham, in her capacity as Health Services Administrator at the Pasco County jail and acting as a policymaker, imposed a prior restraint on healthcare personnel working in the facility: Defendant Bingham directed staff not to reveal the insulin-contamination issue, falsely asserting—as a pretext—that it would violate HIPAA.

108.  HIPAA precludes revealing information about an individual's medical care to third parties without the patient's authorization. HIPAA does not preclude a healthcare provider from alerting any individual or the public generally about a dangerous practice in a government facility—such as using dirty needles to administer injections.

109.  The directive not to reveal this information was an effort to censor employee speech on a matter of great public concern: the potential exposure of diabetic inmates to bloodborne illnesses through unsafe-injection practices.

110.  Defendant Bingham's directive to staff not to reveal the unsafe-injection practices was a content-based prior restraint and thus unconstitutional.

111.  On information and belief, one or more healthcare staff at the Pasco County jail were chilled from speaking publicly or alerting Class members privately about the unsafe-injection problem, thereby preventing the information from being shared with affected Class members so they could take appropriate steps to protect their loved ones while seeking diagnostic care.

112.  The Supreme Court has recognized a listener's right to receive information protected by the First Amendment. *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas."); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 757 (1976) (right of public to receive information about prescription-drug prices); *Citizens United v. FEC*, 558 U.S. 310, 371 (2010) ("The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition of enlightened self-government and a necessary means to protect it.").

113.  The Supreme Court has also recognized that information about the operation of government is entitled to substantial First Amendment protection. *Mills v. Alabama*, 384 U.S. 214, 218–19 (1966) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was

to protect the free discussion of governmental affairs" including "the manner in which government is operated or should be operated"); *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964) ("Speech concerning public affairs is more than self-expression; it is the essence of self-government."); *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940) (noting "the public need for information and education with respect to the significant issues of the times.").

114. Whether diabetics incarcerated in the Pasco County jail are being infected with deadly bloodborne illnesses through unsafe-injection practices is a matter of great public concern, both as to the mismanagement of a public facility and as regards the public-health impact of releasing infected people from the jail back into society or into other correctional facilities where they may unwittingly infect others. Disclosing Nurse McCarthy's misconduct is constitutionally protected speech that is being chilled by the prior restraint imposed by Wellpath through Defendants Bingham and Wellpath.

115. Speech concerning potential illegal conduct by government officials is inherently a matter of public concern. Nurse McCarthy's culpable negligence may amount to criminal conduct under Fla. Stat. 784.05(1) ("Whoever, through culpable negligence, exposes another person to personal injury commits a misdemeanor of the second degree"). Healthcare staff would be less likely to report this potentially criminal conduct as a result of the prior restraint.

116. Class members—as individuals affected by the unsafe-injection practices—have a right to receive information regarding their potential exposure from individuals in a position to share that information. For that reason, among others, they have standing to challenge the prior restraint.

117. As a direct and proximate result of the prior restraint on employees imposed by Wellpath's Health Services Administrator, a policymaking employee, Class members suffered and continue to suffer damages.

118. Class members seek declaratory relief, among other relief, that the instruction to staff to refrain from speaking about the unsafe-injection practices is an unconstitutional prior restraint.

119. Class members seek injunctive relief, among other relief, precluding enforcement of the prior restraint.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the following relief:

- An order certifying a class under Federal Rule of Civil Procedure 23, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

- The establishment of a medical monitoring program, funded by Defendants, for all members of the Class;

- The appointment of an independent auditor, at Defendants' expense, to review Wellpath's records to determine which patients are affected by

potential contamination so they may be notified of their potential exposure;

- Declare that Defendants' acts and omissions violate federal law;

- Enter judgment in Plaintiffs and the Class's favor on all claims for relief;

- Award each Class member full compensatory damages;

- Award nominal damages, where appropriate;

- Award attorneys' fees and costs to counsel for Plaintiffs and the Class;

- Award pre- and post-judgment interest at the highest lawful rate; and

- Award all other relief in law or equity to which Plaintiffs and the Class are entitled and that the Court deems equitable, just, or proper.

### JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all issues within this complaint.

Respectfully submitted,

*/s Ashlie Case Sletvold*
Ashlie Case Sletvold (FL Bar #64244)
Jessica S. Savoie (*pro hac vice* to be filed)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
1422 Euclid Avenue, Suite 1610
Cleveland, Ohio 44115
Phone: (216) 260-0808
Fax: (216) 258-0161
asletvold@peifferwolf.com
jsavoie@peifferwolf.com

Joseph C. Peiffer (*pro hac vice* to be filed)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
1519 Robert C. Blakes Sr. Drive
New Orleans, Louisiana 70130
Phone: (504) 523-2434
Fax: (504) 608-1465
jpeiffer@peifferwolf.com

Christopher Ligori (FL Bar #11045)
**CHRISTOPHER LIGORI & ASSOCIATES**
Ligori Building
117 South Willow Avenue
Tampa, Florida 33606
Phone: (877) 444-2929
Fax: (813) 251-6853
cligori@ligorilaw.com